CONCURRENCE
HELENE N. WHITE, Circuit Judge,
concurring.
I agree with the lead opinion that the government has not met its burden under intermediate scrutiny. I write separately to address a few-additional points.
At this stage of the proceedings, we must assume that Tyler is not mentally ill, and so I agree with the lead opinion that we deal here with a prohibition on gun ownership by a person who falls within the ambit of the Second Amendment. The question then is whether Congress’s choice to disqualify anyone “who has been adjudicated as a mental defective or who has been committed to a mental institution,” 18 U.S.C. § 922(g)(4), is a constitutionally permissible proxy for “the mentally ill,” or, applying intermediate scrutiny, is substantially related to, and a “reasonable fit” with, the government’s important interests in reducing crime and preventing suicide.
My colleagues’ concurring opinions find clarity and certainty that eludes me. Judge Sutton posits an on/off switch, apparently derived from Heller, that inquires, “Is the individual properly characterized as a felon today or as mentally ill today in a way that makes him dangerous to himself or others?” Concurring Op. at 712 (Sutton, J.). Similarly, Judge Batchelder appears to argue that, consistent with the common understanding of rights when the Second Amendment was ratified, the right to keep and bear arms must be restored once the individual regains his “reason.” Concurring Op. at 704-06 (Batchelder, J.). I readily accept the premise that “once mentally ill does not mean always mentally ill,” Concurring Op. at 710-11 (Sutton, J.), but the translation of that truth into the asserted right to an individualized “present-tense” determination is less clear, as are the contours of such a determination, or what constitutes having regained reason.
I am uncertain whether, apart from the permanence of the disqualification, my concurring colleagues accept § 922(g)(4) as a permissible proxy for “the mentally ill,” or whether they conclude that Congress cannot constitutionally rely on a state adjudication that someone should be involuntarily committed or is a “mental defective” as conclusive evidence of mental illness. Assuming these are constitutionally permissible proxies, as I believe they are, does a person so adjudicated have the right to put the government to its proofs immediately after being released from confinement, or would some period of disqualification without the opportunity for an individualized determination of mental health pass constitutional muster? If the *701 person is not presently mentally ill,[1] how does the potential for relapse factor in, if at all? And, if the on/off switch is a function of mental illness and reason, how does dangerousness enter into the equation?[2] Further, what is the legal status of a person whose condition after release from involuntary commitment requires ongoing treatment or medication, but who functions normally and responsibly with that treatment or medication — is that person mentally ill or entitled to a restoration of the right to keep and bear arms? Also, is the statutory test of Section 105 sufficient— that the circumstances of the adjudication or commitment, “and the person’s record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest” — or is it too far removed from the constitutionally permissible disqualification of mental illness? See NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 105. Although the on/off, present-reason inquiries posited by the concurring judges appear on the surface to be simple-and straightforward, they have the potential to be less workable than the means-end scrutiny the opinions reject.
In an ideal world, every disability or privilege would be subject to accurate individual adjudication based on individual facts, but, assuming such adjudication is even possible in the present context,[3] the Constitution permits legislative judgments and proxies, provided the regulation satisfies the appropriate level of scrutiny. I agree with the lead opinion and Judge Moore’s dissent that this court is better equipped to apply means-ends scrutiny to Congress’s chosen test for mental illness than to devise a new “on/off’ or “restored-to-reason” test that offers only the illusion of certainty. Courts have long applied means-end scrutiny in the First Amendment context and many of our sister circuits have applied this framework to Second Amendment challenges as well.
The question remains whether § 922(g)(4) is a reasonable fit with the important governmental interest in preventing crime and suicide. The definitional fit — adjudication as a mental defective or involuntary commitment — is patently reasonable, but the durational fit is troubling. *702 As the lead opinion explains, although the government has connected mental illness with crime and suicide, it has failed to provide adequate support for a lifetime disqualification of persons previously committed. Therefore, because the government has not, on this record, met its burden to establish a reasonable fit between § 922(g)(4)’s permanent disqualification and the government’s important interests in reducing crime and suicides, remand is necessary.

. It is unclear whether Judge Batchelder finds mere mental illness a sufficient disqualification, or whether insanity, i.e„ the loss of reason, is required to remove someone from the ambit of the Second Amendment.

. It is also unclear to me how the on/off switch operates with respect to felons. I understand Judge Sutton to accept as constitutional the permanent bar on gun possession by all felons, even non-violent ones, but the rationale and even some of the language advocating the present-tense inquiry applies to felons as well. Separate and apart from the on-switch being engaged in error due to mis-identification — which is a red-herring — criminality is no more permanent than mental illness; just as mental illness is cured, felons are rehabilitated, and just as formerly mentally ill persons have achieved- greatness, so have rehabilitated felons. Further, although Judge Sutton finds it self-evident that the lifetime disqualification cannot be applied to felons who have been pardoned, this'is a function of statute. See 18 U.S.C. § 921(a)(20). A pardoned felon has not had the off switch engaged in error; rather, he has been forgiven.

.Congress permitted the states to enact relief-from-disability programs, and mandated the Section 105 program as a condition of participation in grant programs, Pub. L. No. 110-180, § 103, but Congress also found that ATF officials who had been charged with administering the defunded federal relief-from-disabilities program determined that it was virtually impossible to know with any certainty the present dangerousness of persons who had once been committed due to mental illness, see H.R. Rep. No. 102-618, at 14 (1992).